No. 38,827

Roy Gillet et al., *Appellees,* v. Jack Powell et al., *Appellants.*

(254 P. 2d 258)

Opinion filed March 7, 1953.

*David W. Wheeler,* and *Edwin G. Westerhaus,* both of Marion, argued the cause and were on the briefs for the appellants.

*D. M. Ward* and *Charles W. Ward,* both of Peabody, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to partition mineral interests in place. Judgment was for plaintiffs. Defendants have appealed.

After identifying the parties, the petition alleged that all parties were the owners of all or most all of the oil, coal and other mineral rights and royalty interests under a described quarter section. The petition set out the means by which the various parties acquired the interests claimed; that there was oil production under leases commencing in 1918, but all wells had been plugged and abandoned and the leases released; that partition of the surface and agricultural rights had been had and were owned by plaintiff Gillet. The petition then contained an allegation as follows:

"Partition of surface and agricultural rights has been had and are now owned by Roy Gillet. He claims inherited interest from Jules Gillet, Sr., after the death of the widow follows the real estate he owns. Plaintiffs urge partition by valuation and appraisement since the interests are unequal and

badly scattered, and partition in kind would cause manifest injury. It is inequitable to force obtaining signatures of such owners, without which reputable operators will not drill for oil and gas."

The prayer was that partition of the oil, gas and other minerals in place and interests in real estate among the tenants in common in the land in question be made according to the respective interests of the parties or by valuation and appraisement and for equitable relief believing that partition cannot be had without manifest injury and proceeds distributed according to law. Defendants' demurrer to this petition was overruled.

Six of the defendants then answered admitting the allegations as to the residence of the parties and denying that the plaintiffs had stated any cause of action against the defendants. The answer then alleged that the answering defendants each owned as heirs of one Jessie Kellum an undivided one-seventh interest in the oil, gas, coal and other mineral rights under the land in question and that such interests carried with the above real estate for the purpose of exploration for the mineral interests.

The answer further alleged that oil had been produced upon the property in question under oil and gas leases executed by the common ancestor of the parties, who desired to have the entire family participate in all oil recoveries, and for that reason executed the instruments set up in plaintiffs' petition and for a number of years the parties or their predecessors enjoyed the benefits of this family arrangement but that several years ago the producing wells were plugged and the leases released; that recently interest had developed in the land in question for a secondary recovery oil operation. The answer alleged that an oil and gas lease could be sold at once for the purpose of exploring the land in question for oil and gas; that defendants were willing to execute such a lease but plaintiffs refused to sign until all the defendants were "squeezed out of" their fractional oil and gas mineral interest by means of the partition suit in question; that plaintiffs had entered into a scheme with deliberate intent of "squeezing out" the answering defendants; that plaintiffs were using the suit as an instrument of fraud and oppression; that a partition by appraisement would set up merely the present value of the royalty interests and would not take into account a future value that would be immediately present if plaintiffs would sign an oil and gas lease and that a partition would result in a great financial loss to defendants; that a

partition of mineral interests in the land at this time would be inequitable and unconscionable and should be denied. The defendants further alleged that they had no adequate remedy at law; that no effort had been made by plaintiffs to secure the signatures of defendants on an oil and gas lease and that the defendants denied that it was inequitable to require plaintiffs to secure signatures of defendants and other co-owners to an oil and gas lease when such signatures could be obtained. The answer further alleged there was no reason for equitable interference in the co-ownership of the land by plaintiffs and defendants and a partition of the mineral interests in the land would be in contravention of the intent of the common ancestor in setting up a program wherein the entire family would share in the enjoyment of oil produced. The answer then contained an allegation:

"Answering defendants further allege that this case is res adjudicata for the reason that the question in issue has been passed upon in the District Court of Chase County, Kansas, wherein plaintiffs in this action asked that partition of mineral interests be denied and a judgment was made to that effect in that Court."

The prayer of the answer was that partition be denied and that if it be allowed then that the writ include partition of all minerals in place both of the owner of the agricultural and surface rights and of all the other co-tenants of royalty interests, including right of ingress and egress for the purpose of exploring for oil and gas.

The reply was a general denial and an admission that oil recovery was had; that all wells have long since been abandoned; some possibility of secondary recovery had arisen; that each of the plaintiffs had an undivided one-seventh in the oil, gas, coal and other minerals under the land in question; that it might be possible to sell an oil and gas lease on all or some part of said premises.

Some other defendants filed an answer in substance to the same effect as the one already set out.

The trial court took note of a stipulation as to the interests of the parties, that there were no outstanding oil and gas leases upon the land of record; that oil production was had commencing in 1918 but that all producing wells have been plugged and abandoned, more than fifteen years ago; that there was a possibility of secondary recovery of oil to result from recent inquiries about drilling for same and found that judgment in favor of Roy Gillet, Jule Gillet and Henry Gillet, plaintiffs, should be rendered against all defendants

and Millie Kellum upon the facts and the law. Judgment was entered accordingly. The journal entry ordered that the perpetual interests in the oil and gas and other minerals under the land be partitioned, commissioners were appointed to appraise the land and the time for election was fixed at ten days from the time the commissioners' report was confirmed.

The defendants, Albert H. Kellum, Ernest E. Kellum, Sherman, A. Kellum, Kenneth K. Kellum, Bernice Mildred Jennings, Jack Powell, Elwood Powell and Ida Mullikin filed a motion for a new trial on April 5, 1952, on the grounds of abuse of discretion by the trial court, erroneous rulings of the court and that the verdict was in whole or in part contrary to the evidence and the law. On May 5, 1952, this motion was overruled—hence this appeal.

The specifications of error are that the judgment was contrary to law, as applied to the evidence and the record as a whole; that the judgment was wholly contrary to the evidence; that the action was *res adjudicata;* that the court erred in overruling defendants' demurrer to plaintiffs' petition; in overruling defendants' demurrer to plaintiffs' evidence; in failing to dismiss the case after one of the plaintiffs stated she did not authorize the suit; in overruling plaintiffs' motion for a new trial; in refusing to set aside the judgment and in refusing to enter judgment for the defendants.

The position of defendants as stated in their brief is that they were not permitted to join in a regular oil and gas lease although willing to do so because plaintiffs would not sign such a lease and hence plaintiffs were refusing to do equity although they come into an equity court asking an equitable remedy and the purpose of this partition suit was to squeeze out defendants. They further argue the case was *res adjudicata.*

We shall dispose of the argument as to *res adjudicata* later.

The defendants' position is further stated in their brief as follows:

"We submit that appellants' demurrer to the petition should have been sustained since no equitable grounds for partition whatsoever were alleged in plaintiffs' petition as were alleged in the *Holland v. Shaffer,* supra, case. We further submit that appellants' demurrer to plaintiffs' evidence should have been sustained for no evidence of any kind was introduced by plaintiff showing any equitable reason for partitioning these minerals in place . . ."

Defendants cite *Fry v. Dewees,* 151 Kan. 488, 99 P. 2d 844; *Drake v. Drake,* 153 Kan. 56, 109 P. 2d 77; and *Spikes v. Magnolia Petroleum Co.,* 158 Kan. 659, 149 P. 2d 348. They argue these opinions

all hold that a cotenant in minerals in place may not have partition except upon equitable grounds, which must be alleged in the petition and proved by plaintiffs. They argue their demurrer to the petition should have been sustained because no equitable grounds for partition were alleged in the petition and none proved by plaintiff. They argue the trial court in overruling their demurrer to the petition and to plaintiffs' evidence actually held that our opinion in *Holland v. Shaffer*, 162 Kan. 474, 178 P. 2d 235, in effect overruled all three of the above opinions.

This argument is not good. In *Holland v. Shaffer*, supra, we examined our opinions in the Fry, Drake and Spikes cases and discussed the argument made there by the appellee that those opinions compelled a holding that no cause of action for partition of mineral rights can ever be stated unless it is based on sufficient equitable grounds. In each case we distinguished the holding from the facts presented in the Holland case. We pointed out that in the Holland case, as here, there was no production and no oil and gas lease on the land. We pointed out that a mineral interest in the oil and gas in place constitutes an interest in real estate. (See *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56; *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4; *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995; *Hushaw v. Kansas Farmers Union Royalty Co.*, 149 Kan. 64, 86 P. 2d 559; also *Holland v. Shaffer*, supra.)

Here as in the Holland case the petition and proof discloses nothing was sought to be partitioned except undivided interests in and to the oil and gas and other minerals in place held by cotenants. Actually once we conclude, as we must, that interests in oil and gas in place is real estate, such holding disposes of the argument of defendant that their demurrer to the petition and to the evidence should have been sustained.

G. S. 1949, 60-2101, provides:

"When the object of the action is to effect a partition of real property, the petition must describe the property and the respective interests of the owners thereof, if known." G. S. 1949, 60-2105, provides:

"After the interests of all the parties shall have been ascertained, the court shall make an order specifying the interests of the respective parties, and directing partition to be made accordingly. Upon making such order the court shall appoint three commissioners to make partition into the requisite number of shares. For good and sufficient reasons appearing to the court, the commissioners may be directed to allot particular portions to any one of the parties."

These sections confer sufficient authority on the court to partition undivided interests in oil and gas in place among its various co-tenants, once it is determined, as we have demonstrated, that such interests are real estate.

This holding does not mean that partition is not decided on equitable principles.

G. S. 1949, 60-2114, provides:

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests."

In *Fry v. Dewees,* supra, we said:

"It has been held that while an action in partition is a statutory action, the court has substantially the same powers in administering it as were exercised by chancery courts under equity practice and that the last quoted section of the statute gives the court full power to settle all questions involved on just and equitable principles. (*Sarbach v. Newell,* 28 Kan. 642, 30 Kan. 102, 1 Pac. 30; *Scantlin v. Allison,* 32 Kan. 376, 379, 4 Pac. 618; *Phipps v. Phipps,* 47 Kan. 328, 336, 27 Pac. 972; *Hazen v. Webb,* 65 Kan. 38, 68 Pac. 1096; *Sawin v. Osborn,* 87 Kan. 828, 126 Pac. 1074; Ann. Cas. 1914A 647; *Thresher Co. v. Judd,* 104 Kan. 757, 180 Pac. 763; *Wright v. Simpson,* 142 Kan. 507, 51 P. 2d 1; *Young v. Young,* 148 Kan. 876, 84 P. 2d 916.) In none of these cases, however, was partition refused or denied. Nor is any decision of this court called to our at-tention where partition of real estate has been denied."

In *Holland v. Shaffer,* supra, we said:

"Are we then compelled to conclude a cotenant of minerals in place may always obtain judicial partition thereof, as a matter of absolute right? Can there be no possible defense to such an action? Appellant concedes partition here should be by appraisal and sale for the reason it probably could not be made in kind without manifest injury. Appellees, however, argue that to per-mit partition of minerals in place, as a matter of right, might easily result in fraud and oppression; that mineral interests might be sold and later partitioned with the deliberate intent of 'squeezing out' numerous cotenants of small means who had invested in such interests and who would be unable to purchase all the mineral interests in the event of partition by appraisal and sale; that owners of surface rights could likewise be deprived of fractional interests in and to the minerals in place which they retained and from which they hoped to reap substantial benefits.

.   .   .   .   .   .   .   .   .   .

"It is true our statute specifies what shall be stated in a petition for parti-tion of real estate. But the statute is only procedural in character. The stat-ute does not say partition of real estate shall be granted as a matter of right. Courts of equity have evolved that rule. Our partition statute makes no attempt to deny to courts the power to consider defenses to such an action. In fact the statute does not deal with defenses to partition actions at all. It would there-fore appear courts of equity retain their inherent power to consider defenses

which would prevent the remedy of partition from becoming an instrument of fraud and oppression. In a carefully reasoned opinion in *Wolfe v. Stanford,* 179 Okla. 27, 64 P. 2d 335, it was held:

" 'Generally, the right of partition is absolute, but in connection with the partition of oil and gas rights, the court is vested with sufficient discretion in denying or awarding relief to prevent the remedy from becoming an instrument of fraud or oppression. The prevention of partition upon this ground is a matter of defense to be pleaded and proved as such.' "

In the Holland case we held:

"Courts of equity are vested with sufficient power and discretion in denying or awarding relief to prevent the remedy of partition from becoming an instrument of fraud or oppression. The prevention of partition on such grounds, or other grounds if any, is a matter of defense to be pleaded and proved as such."

It follows the ruling of the trial court in overruling the demurrer of defendants to the petition and to plaintiffs' evidence was correct.

This case was tried to final judgment and partition was ordered. Defendants argue the entire record compels a conclusion that equity requires partition to be denied.

There actually was not so very much dispute about the facts. Plaintiff Roy Gillet owns all the surface rights in fee simple, having acquired it in a partition suit some time before. The other plaintiffs and the defendants are his cotenants in the minerals in place only. There were twenty-five cotenants who would have from an undivided one-seventh share in the minerals in place to an undivided 5/840th. There had been some oil production on the land in the past but at the time the action was filed the wells had all been plugged and there were none. The parties stipulated the above and that there was a possibility of secondary recovery of oil to result from recent inquiries about drilling. The plaintiff testified that he had never attempted to induce the other tenants to sign a regular lease on the land in question; that he had caused a lease and contract to be circulated among the other heirs whereby they were to agree to pay him $500 for every well drilled for damage to his land. He also testified that oil men had told him they would not lease the tract for oil because there were too many heirs. The trial court found that judgment should be rendered in favor of plaintiffs and against defendants. This finding settled the issue of fact in favor of plaintiffs. Is this record such that we should hold the facts require that we should set aside that finding? Does equity require that partition should be denied? In such case the trial court has a wide discretion. We are reluctant to disturb it in the absence of its abuse. (See *Johnson v. Burns,* 160 Kan. 104, 159

P. 2d 812; also *State v. Foren*, 78 Kan. 654, 97 Pac. 791; and also *Deeds v. Deeds*, 108 Kan. 770, 196 Pac. 1109.) There is no evidence here that undue hardship will result if partition be ordered. Even if there were hardship in and of itself is no reason for denying it. (See *Holland v. Shaffer*, supra, and cases cited.) Defendants argue that the appraisement will only be of the present value and the future value will not be considered. That does not follow.

No reason appears why the appraisers could not take into consideration the future value of these interests, speculative though they may be. One fact is crystal clear. There will never be any development of the land unless partition be had.

Defendants argue that partition may not be had in this action for the reason that it is *res adjudicata*. That comes into the case because sometime ago a partition action was filed in Chase county to partition the surface and mineral rights under land in Chase and Marion counties, including this land. Some of the parties to this action were parties to that. Judgment was entered decreeing partition. In due time some of the parties to this action, including the plaintiff, filed a motion to set aside the judgment as to minerals in place on the ground that they were not afforded a reasonable opportunity to present their evidence. This motion was sustained and the judgment was set aside as to the mineral interests. The rule that an issue which could have been decided in an action is *res adjudicata* does not apply for the reason that the parties by their motion asked the trial court to take the mineral rights under this land out of the judgment which they had a right to do and the court sustained the motion as it had power to do. No appeal was taken from that judgment and it is final.

Judgment of the trial court is affirmed.

HARVEY, C. J., dissents.